Mary L. KIRKLAND–ZUCK, Petitioner,

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** Respondent.

No. 02–3038.

United States Court of Appeals, Federal Circuit.

Sept. 30, 2002.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

PER CURIAM.

The question is whether the Merit Systems Protection Board ("Board") properly upheld the agency's penalty of removal, which the Board's administrative judge mitigated to a 90–day suspension after sustaining some, but not all, of the charges upon which the agency based its removal. We affirm the Board.

I

The Department of Housing and Urban Development ("HUD" or "the Department") proposed to remove the appellant Mary Kirkland–Zuck from her position as an Equal Employment Opportunity Specialist, GS–12. The notice of removal contained three charges: (1) violating the agency's workplace violence policy; (2) rude, boisterous, disruptive and disrespectful behavior; and (3) making false statements about other employees. Each of the first two charges contained the same 12 specifications; the third charge contained 8 different specifications.

The notice of proposed removal informed Kirkland–Zuck that she could reply in writing, orally, or both. She did neither. Instead, she marked up the notice with numerous comments and criticisms, and returned it.

After a telephone hearing, the administrative judge held that because the first two charges were based upon the same specifications, the first charge merged into the second. He held that the Department had proved 4 of the 12 specifications and a portion of a fifth and therefore had proved charge 2; but had failed to prove charge 3. The sustained specifications involved conduct over a six-month period.

They included the following actions by Kirkland–Zuck: (1) She posted a newspaper article about HUD in which she wrote that HUD persons were "cheaters, bullies, cowards and liars." (2) She posted a copy of a written instruction from her superior, on which she wrote: "Do not come near my desk ever again or talk or write to me. I will file sexual harassment charges against you also." (3) She left the following message for two Virginia state officials: "you either work cooperatively with me, or, we play dirty." (4) She sent a message electronically to a Department lawyer in Pennsylvania using the phrase "an eye for an eye and a tooth for a tooth," which he took as a threat, and also stated "I will not tolerate disrespect or elitism, especially from a two-bit attorney[,] racist, sexist, arrogant, coward, spineless person like you."

Finally, in a portion of a specification that the Board (but not the administrative judge) sustained, she told a security guard: "I'm [Mary Kirkland] going to get you because your (sic) taking sides with the White folks, your (sic) an uneducated dumb Negro that needs an education."

The administrative judge held, however, "that a 90–day suspension is the maximum reasonable penalty for the 5 sustained specifications of the merged charge. In my view, the stringency of a 90–day suspension adequately conveys the seriousness of the offense in order to deter future misconduct by the appellant and promotes the efficiency of the service." He recognized that in determining the penalty the Department had properly considered the two previous disciplinary actions taken against Kirkland–Zuck: a 1997 letter of reprimand for "failure to carry out a direct order" and a 1998 5–day suspension "for failure to carry out a direct order, disrespectful behavior, and threatening behavior." The administrative judge noted that although the deciding official "cited the 'absence of mitigating circumstances' as a factor in her decision to remove the appellant," the record showed that Kirkland–Zuck's husband had died of a drug overdose a few months before her misconduct began, and he concluded that: "it is clear that her husband's untimely and tragic death left her distraught and shaken and this condition undoubtedly contributed to her short temper and impatience with her supervisors and coworkers."

On the Department's petition for review, the full Board reinstated the penalty of removal and, as thus modified, sustained the hearing officer's initial decision. The Board stated that Kirkland–Zuck's

disrespectful conduct was intentional, repeated, and serious ... the Board and our reviewing court have consistently held that insolent disrespect toward supervisors so seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once. In this case, the sustained specifications describe several incidents of the appellant's disrespectful conduct toward supervisors, coworkers, and non-agency personnel over a several-month period. Moreover, as the administrative judge recognized, the appellant's previous disciplinary record of a reprimand and suspension for similar misconduct is an aggravating factor. (citations omitted).

## II

"[D]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. This court defers to an agency's choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Brook v. Corrado,* 999 F.2d 523, 528 (Fed.Cir. 1993) (citations omitted). This court will uphold an agency penalty unless it "is 'outrageously disproportionate to the offense' in light of all relevant factors." *Law v. U.S. Postal Serv.,* 852 F.2d 1278, 1280 (Fed.Cir.1988) (quoting *Yeschick v. Dep't of Transp.,* 801 F.2d 383, 384–85 (Fed.Cir.1986)).

Under these standards, the Board properly reinstated the Department's penalty of removal. As the Board pointed out, Kirkland–Zuck's offenses were serious and protracted. They included "several incidents of the appellant's disrespectful conduct toward supervisors, coworkers, and non-agency personnel over a several-month period." An agency cannot be expected to condone or tolerate such disturbances in the workplace. *Cf. O'Neill v. Dep't of Hous. & Urban Dev.,* 220 F.3d 1354, 1364 (Fed.Cir.2000), *cert. denied,* 531 U.S. 1197, 121 S.Ct. 1202, 149 L.Ed.2d 116 (2001) ("The [administrative judge] properly noted that the [agency] 'cannot tolerate disrespectful conduct to a supervisor.'"

(quoting *Webster v. Dep't of the Army,* 911 F.2d 679, 688 (Fed.Cir.1990))).

As the Board also pointed out, Kirkland–Zuck's two prior disciplinary incidents "for similar misconduct is an aggravating factor." Removal of such a disruptive employee "will promote the efficiency of the service." 5 U.S.C. § 7513(a) (2000). Although only some of the charges and specifications were sustained, by seeking Board review of the administrative judge's mitigation of the penalty of removal the Department indicated that it would have imposed that penalty for the sustained charge and specifications.

Kirkland–Zuck contends that the penalty of removal was unreasonable because the deciding official did not consider the emotional stress she was under due to the death of her husband from a drug overdose. She did not raise that issue before the Department, however, although she had ample opportunity to do so. The Department had no duty to consider alleged mitigating factors not raised. *Yeschick,* 801 F.2d at 385.

Finally, Kirkland–Zuck argues that the Board ignored her contention that her removal violated her rights under the First Amendment. That argument, however, relates solely to the third charge of making false statements about other employees. The administrative judge rejected that charge, and it was no longer an issue in the proceedings before the full Board.

## CONCLUSION

The decision of the Board sustaining Kirkland–Zuck's removal is

*AFFIRMED.*